**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,  Criminal No. 17-mj-30666

      Plaintiff,  Hon. Mark A. Goldsmith

v.

RAMIRO NUNEZ JR.,

      Defendant.

_____/

**OPINION AND ORDER GRANTING**
**THE GOVERNMENT'S MOTION TO REVOKE ORDER OF BOND**

Before the Court is the Government's Motion to Revoke Order of Bond (Dkt. 11).  After applying the proffered evidence to the factors in Title 18, United States Code, Section 3142(g), this Court orders Nunez detained pending trial.

### I.  BACKGROUND

#### A.  Nunez's Proffered Information

At the hearing on January 23, 2018, Nunez proffered that he has not fled the district even though he knew he was under investigation.  He proffered that there is no evidence to suggest that he has continued to engage in the behavior that was the subject of the search warrant and that he has put up his family home to secure his bond.  Lastly, Nunez also argued that he has had a stable job as a security guard.

At the hearing, defendant did not contest that there is probable cause to believe that he committed the crimes of production of child pornography and online

1

enticement of a minor, in violation of 18 U.S.C. §§ 2251(a) and 2422(b), and accordingly there is a presumption in favor of detention.

**B.  The Government's Proffered Information**

The government proffered the allegations contained in the Criminal Complaint, information from FBI agent investigation and the circumstances of defendant's employment in California; specifically, that he is employed as a security guard at a shopping mall which is a place that teenagers and young girls typically congregate. The government claimed that the following facts support detention:

**1.  The Criminal Complaint**

Defendant Nunez was charged in a criminal complaint with production of child pornography, online enticement and coercion of a minor, distribution, receipt, and possession of child pornography and transmission of a threat in interstate commerce. *See* ECF No. 1, Compl. This case involves several minor victims; one of whom is located in Michigan and several dozen others that have yet to be identified. It is likely that additional victims will be identified and located as the investigation of Nunez continues. The Michigan victim, identified in the criminal complaint as MV-1, was 15 years old when Nunez met her online, groomed her into taking sexually explicit pictures and then distributed her nude images to a widely-visited pornography website. The investigation thus far has revealed that Nunez has done this to several other girls.

In July 2015, MV-1 (MV-1) began exchanging nude photos with the Defendant. Compl. ¶ 5. By the fall of 2015, Nunez became demanding and started to threaten MV-1, threatening that if she did not send additional nude photographs and videos to him, he would release nude photos and videos of her to others. Compl. ¶ 6. After being coerced into sending more photos, MV-1 eventually stopped all communication with Nunez in January 2016. *Id*. ¶ 7. In particular, MV-1 complied with what Nunez called "The Free Bird Challenge." Nunez posted a story on social media application "Snapchat" called The Free Bird Challenge. The "challenge" issued by Nunez required MV-1 to send five nude images of herself and five 10-second nude videos of herself engaging in actions directed by Nunez. If MV-1 complied, then she would not have to talk to him any longer. *Id*. ¶ 17. MV-1 was instructed that if she did not engage in the Free Bird Challenge or if she tried to block Nunez from contacting her through social media, he would distribute the nude images he already had of her. *Id*. ¶ 17. After MV-1 complied with The Free Bird Challenge, she blocked Nunez on all social media and wanted no further contact with him. *Id*. ¶ 18.

Ten months later, in October 2016, Nunez again started contacting MV-1 and her boyfriend. And again, Nunez threatened to release nude images of MV-1 if she didn't send additional nude pictures and videos. *Id*. ¶ 17. When MV-1 did not

3

comply with the demands, Nunez, as he promised in his threats, released nude photographs of MV-1 to her boyfriend and her sister's boyfriend. *Id.* ¶ 17.

The FBI interviewed MV-1's boyfriend (identified in the criminal complaint as Witness 1) and MV-1's sister's boyfriend (identified in the criminal complaint as Witness 2). MV-1's sister's boyfriend stated that Nunez sent 18 nude pictures of MV-1 to him over Instagram on November 3, 2016. Compl. ¶ 23. MV-1's boyfriend stated that Nunez sent several nude pictures of MV-1 on Instagram around the same time. *Id.* ¶ 22.

The FBI also interviewed an individual who was "friends" with MV-1's boyfriend on Instagram. That person, Witness 3, reported that an individual believed to be Nunez sent nude pictures of MV-1 to him/her. The pictures showed MV-1 topless and the videos depicted MV-1 moving a camera up and down her body—showing MV-1's face and vagina at different times. *Id.* ¶¶ 24-27.

Law enforcement tracked the IP address that Nunez used to an address on Ventura Canyon Avenue in Panorama City, California. *Id.* ¶ 8. Law enforcement subpoenaed records from Kik and Snap relating to the screennames that Nunez used while communicating with MV-1. The IP addresses resolved to Nunez's residence in Panorama City. *Id.* ¶¶ 30-32. Records from Time Warner Cable also connected the IP address to Nunez's home in Panorama City. *Id.* ¶ 35.

MV-1 reviewed a photo lineup, which included a picture of Nunez, and identified Nunez as the person with whom she had been exchanging photos and who coerced and threatened her. Compl. ¶ 39.

**2.      The December 20, 2016 Execution of Search Warrant and Interview**

On December 20, 2016, law enforcement executed a search warrant at Nunez's residence in Panorama City. Nunez was interviewed by special agents with the FBI and made the following admissions:

- Nunez admitted to coercing child pornography from multiple minor females.

- In particular, Nunez admitted that he would use social media to contact minor females between the ages of 13-17 years of age.

- Nunez would initially ask for pictures of the minor females clothed and progress to asking for pictures or videos of the girls in their bra and underwear.

- Eventually Nunez would request nude pictures and videos of the girls.

- Nunez stated that he exchanged sexually explicit video or images with 15-40 minor females.

- Nunez admitted that in some instances the girls refused to provide additional sexual pictures or videos and he responded by threatening to distribute their sexual pictures or videos to others.

5

- Nunez admitted that he has followed through with the threat of sharing the minor girls' photos or videos. He recalled an incident where he sent three people—friends of the minor female—pictures of the minor female who refused to send more sexually explicit pictures or videos or herself.

- Nunez stated that he recognizes that his behavior of communicating with minor females for his own sexual gratification is destructive.

**3.     Forensic Analysis of Evidence Seized from Nunez**

Law enforcement seized electronic evidence from the execution of the search warrant. Child pornographic images of MV-1 were located on Nunez's computer and phone. Compl. ¶ 45. Numerous videos and images of minor females were found on Nunez's electronic media. Additionally, law enforcement found records that an individual using the username big_papi_2121@yahoo.com (an email associated with Nunez) uploaded 18 videos to a pornography website called Xvideos.[1] Two of the videos appear to be videos of MV-1. *Id.* ¶ 45(f). Additionally, there was evidence recovered relating to The Free Bird Challenge from the devices. *Id.* ¶ 45(g).

---

[1] Xvideos is the world's largest pornographic video sharing and viewing website. It has been ranked as thd 50th most viewed website in the world. https://en.wikipedia.org/wiki/XVideos. (Last visited December 22, 2017).

Following the completion of the forensic evidence seized from Nunez's residence, a criminal complaint was obtained from U.S. Magistrate R. Steven Whalen.

## II. ANALYSIS

If the court finds that no set of conditions will reasonably assure the appearance of the person and the safety of the community, the court shall order detention pending trial. 18 U.S.C. § 3142(e)(1). In reaching this determination, courts consider four factors. *See* 18 U.S.C. § 3142(g).

**A.    Nature and Circumstances—18 U.S.C. § 3142(g)(1)**

This is a presumption case. Given that Nunez is charged with offenses that involve at least one minor victim under section 18 U.S.C. §§ 2251(a), 2422 and 2252A(a)(1), the law presumes that no condition or combination of conditions will reasonably assure the safety of the community or the appearance of the person as required. *See* 18 U.S.C. § 3142(e)(3)(E).

Nunez has arguably rebutted the presumption of detention as it relates to the safety of the community. As noted above, Nunez acknowledged wrongdoing with regard to his actions toward MV-1. Since that time, there is no evidence that Nunez has engaged in any wrongdoing.

However, the nature and circumstances of this offense are unquestionably serious as they involve numerous minor victims, approximately 15-40 by

7

Defendant's own admission (a factor emphasized under 3142(g)). Because of his actions, at least one minor victim has to live with the fact that recordings of her and photos of her will forever be dispersed around the Internet. And, with respect to this minor victim, defendant repeatedly extorted her to produce sexually explicit and pornographic activity and to record these activities for his own gratification, despite knowing she was a minor, and despite her repeated attempts to block the defendant on social media.

**B.     Weight of the Evidence—18 U.S.C. § 3142(g)(2)**

The weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community." *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

As evidenced by the criminal complaint, the weight of the evidence against Nunez is strong that he is a danger. Here, Nunez admitted to hurting multiple minor victims—one that the government has been able to identify. "Just one sexually-related offense against *just one* minor is enough to imply dangerousness." *United States v. Fitzhugh*, No. 16-mj-30364, 2016 WL 4727480, at *5 (E.D. Mich. Sept. 12, 2016) (ordering detention where defendant was facing similar charges of production of child pornography and online enticement).

Nunez has not overcome the presumption of detention. He did not come forward with any evidence to mitigate his dangerousness, but instead argued that he has family ties in California (which is not the district where he is charged and is not the district where he will make court appearances) and proffered the lack of evidence of continuing criminal conduct. While Nunez has no criminal history, that is perhaps even more a reason that he poses a danger to himself and to others and a flight risk, given that he is now facing a potential 15-year sentence of imprisonment. It is further noted that Pretrial Services from the Eastern District of Michigan recommends detention.

C. **History and Characteristics—18 U.S.C. § 3142(g)(3)**

While Nunez does not have a criminal history, his admitted criminal conduct in this case is relevant. The circumstances of his living situation—living with children in a home where there is undoubtedly internet access through computers or telephones—are troubling. Additionally, his employment—working as a mall security guard—would put the community at risk if he is allowed to continue to work. Shopping malls are popular meeting places for young teen girls—his target victims.

D. **Danger to Community or Anyone—18 U.S.C. § 3142(g)(4)**

In light of Nunez's admitted actions in this case, he is a danger to the community. His actions show that he has put children at risk in the past and likely

9

caused irreparable harm. He could easily continue to inflict that harm with a click of a button, by sharing with the world the child pornography that he produced with his other victims. "[G]iven the ease of accessing the internet, the Court is unconvinced that a set of conditions exists that would effectively prevent Defendant from contacting other minors for similar online chats" and further exploitation of children. *See United States v. Runnerstand*, No. 08-20119, 2008 WL 927774, at *3 (E.D. Mich. April 4, 2008) (ordering detention of defendant who had exchanged sexually explicit images with a minor through the internet). In sum, despite showing that he has not engaged in criminal conduct since his admission of wrongdoing, the Court holds that there are no set of conditions that could reasonably assure the safety of the community.

### III. CONCLUSION

For these reasons, it is ORDERED that the bond is **REVOKED.** The defendant is to remain in the custody of the United States Marshals pending transfer to the Eastern District of Michigan.

**SO ORDERED.**

Dated: February 23, 2018              s/Mark A. Goldsmith
       Detroit, Michigan                    MARK A. GOLDSMITH
                                            United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 23, 2018.

                                                  s/Karri Sandusky
                                                  Case Manager